IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

DEC 23 2019

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

MENGYANG LI,
        Plaintiff,

                    COMPLAINT
                    CIVIL ACTION NO. 3:19CV216

v.

SHEPHERD UNIVERSITY,
        Defendant.

## LAW SUIT AGAINST SHEPHERD UNIVERSITY FOR AGE, RACE AND NATIONAL ORIGIN DISCRIMINATION, HARASSMENT, RETALIATION AND PERJURY

Comes now the plaintiff, Mengyang Li, representing himself, pursuant to the Age Discrimination in Employment Act (29 U.S.C. 621-634) (as amended) and the Civil Rights Act of 1964 (as amended) that prohibit age, race, or national origin discrimination/harassment in employment, and prohibits retaliation for filing a complaint/grievance of job discrimination/harassment, and pursuant to the 18 U.S.C. §§ 1621 and 1623 that prohibit perjury, asks this Court for a decision on this law suit.

CHARGES. In discrimination against me, on May 3, 2017 and on April 23, 2018 Shepherd University denied my promotion applications. Multiple officers and employees of Shepherd University continuously discriminated/harassed me from fall 2014 to September/October 2019. These job actions were based on my **age, race** and **national origin** and based on **retaliation for my filing a complaint/grievance of job discrimination/harassment**. Multiple officers and employees of Shepherd University,

1

Dean Robert Warburton, Department Chair Dan DiLella, Promotion and Tenure

Committee Member Jordan Mader and Lecturer Kyle Hassler perjured themselves in

their testimonies under oath in the West Virginia Public Employees Grievance Board

case Mengyang Li v. Shepherd University, Docket No. 2018-0654-SU hearings.


Plaintiff designates the entire record of the WV Public Employees Grievance

Board case Mengyang Li v. Shepherd University, Docket No. 2018-0654-SU, including

transcripts of levels one and three hearings and the 9/25/2018 prehearing conference, and

case Mengyang Li v. Shepherd University, Docket No. 2018-1475-SU, including the

transcript of 3/20/2019 level one hearing, as material to the questions presented.

If the Court procedure determines that, at this moment, the designation of the

entire record of the WV Public Employees Grievance Board cases 2018-0654-SU and

2018-1475-SU is not appropriate or necessary, plaintiff will submit the appropriate record

of the Grievance Board cases when they are available.

Exhibit P contains the EEOC Notice of Suit Rights and related documents (EEOC

Charge No. 570-2019-01219).

Plaintiff attached his One Page Bio, his publication that significantly advanced

Langmuir's 1917 Nobel Prize work, his most important research paper at Shepherd

University, and Contracts in Exhibit A.

STATEMENT OF FACTS

1. I experienced discrimination and harassment by coworkers and supervisors from fall 2014 through the signing of this law suit.

2. White faculty members and supervisors ganged up to discriminate against and to harass me for a number of years. I testified and had witnesses testified heavily about this at the WV Public Employees Grievance Board 2018-0654-SU both level one and level three of hearings. See Exhibit N 2018-0654-SU Level one hearings transcripts: 12/1/2017 PAGES (4-8, 10-38, Warburton), (39-49, Mader), (50-62, DiLella); 12/8/2017 PAGES (2-31, Li); and 12/15/2017 PAGES (2-22, Li), (31-32, Li, Beard). And see Level three hearing transcripts Volumes I (10/4/2018), II (10/5/2018) and III (10/18/2018): PAGES 17-964 (Kyle Hassler, Scott Beard, Nicholas Martin, Jacquelyn Cole, Mary Haendrix, Jordan Mader, Robert Warburton, Colleen Nolan, Jennifer Sirbaugh, Yulia P. Freeman, Dan DiLella, Carol Plautz, Mengyang Li). **See attached Exhibit B** (filed level one grievance, **especially documents 1-4** inside) and **Exhibit C** (filed level three grievance, **especially Additional Statement of Level Three Grievance** inside).

3. I am Asian, born in China, came to the United States for scientific research in 1986, and became a U.S. citizen in 1999.

4. I spoke to my Department Chair DiLella about discrimination and harassment at least twice before filing a grievance. See Exhibit N Level One 12/8/2017 Hearing Transcript page 4.

3

5. In March 2017, I wrote to my Department Chair and Dean, and Dean forwarded to Provost and President of Shepherd University, that the policies of Shepherd are unfair to faculty based on "his/her older age". See Exhibit N Level One 12/8/2017 Hearing Transcript page 5, and **Exhibit B (document 4 inside).**

6. I wrote to President of Shepherd University about discrimination and harassment twice before filing my grievance. See Exhibit N Level One 12/8/2017 Hearing Transcript page 4. See **Exhibit B (documents 1 and 3, letters to President).**

7. I delivered my letter about discrimination and harassment to Provost, Christopher Ames, before filing my grievance. See Exhibit N Level One 12/8/2017 Hearing Transcript page 18.

8. I talked to the Shepherd General Counsel Alan Perdue about discrimination and harassment before filing my grievance. . See Exhibit N Level One 12/8/2017 Hearing Transcript page 9-12.

9. I talked to the Shepherd University Human Resource Director Marie DeWalt about discrimination and harassment before filing my grievance. See Exhibit N Level One 12/8/2017 Hearing Transcript page 4.

10. Right after I told the above people about the discrimination and harassment, Robert Warburton was promoted to Acting Dean of the School. See Exhibit N Level One 12/8/2017 Hearing Transcript page 17.

11. Robert Warburton was one of my major harassers. See Exhibit N Level one hearings transcripts: 12/1/2017 PAGES (4-8, 10-38, Warburton); 12/8/2017 PAGE 17.

12. Jordan Mader was also one of my major harassers. See Exhibit N Level one hearings transcripts: 12/1/2017 PAGES (39-49, Mader), 12/8/2017 PAGE 4.

13. On October 12, 2017, general counsel Alan Perdue wrote to me on behalf of the University President, denying any discrimination. See attached Exhibit B (document 13 inside, letter).

**14.** On October 30, 2017, I filed my grievance with the Grievance Board. See attached Exhibit B.

15. I filed my grievance 12 working days after I received the letter from Alan Perdue.

16. I went through levels 1, 2 and 3 of the grievance procedure.

17. Jordan Mader, Robert Warburton and I testified about discrimination and harassment in the level one hearing. See Exhibit N Level one hearings transcripts: 12/1/2017 PAGES (4-8, 10-38, Warburton), (39-49, Mader); 12/8/2017 PAGES (2-31, Li); and 12/15/2017 PAGES (2-22, Li), (31-32, Li, Beard).

**18.** On September 4, 2018, Associate Professor Jordan Mader was promoted to the Promotion & Tenure Committee. Mader was under age 40.

**19.** On September 4, 2018, I was not promoted to the Promotion and Tenure Committee. I was age 56.

20. The Grievance Board held a level three hearing on October 4, 5 and 18, 2018.

21. I raised the committee promotion issue at the level three hearing, and it was not objected to. See Level three hearing transcripts Volume I (10/4/2018) Pages 41-48, 361-368, especially in Page 48 Shepherd University General Counsel Alan Perdue answered "No objection."

22. I received transcripts of the level three hearing on 8/30/2019.

23. **My applications for promotion were denied on the basis of not meeting the minimum standard that "Refereed Full Length Journal Publications MUST be published DURING Associate Professor Rank". See Exhibit B (documents 11 and 12 inside), Exhibit C (documents 14 and 15 inside). I am Asian, originally from China.**

24. **"Refereed Full Length Journal Publications MUST be published DURING Associate Professor Rank" is a misinterpretation of the minimum standard published in the Faculty Handbook. See Exhibit B (documents 1-4, 8, 9 inside) and Exhibit C (Additional Statement of Level Three Grievance, and document 16 inside).**

25. **Using "Refereed Full Length Journal Publications MUST be published DURING Associate Professor Rank" as the minimum standard is especially unfair to older people who made very significant scientific discoveries and**

6

very important publications before their career change to teaching. See Exhibit B (document 4 inside).

26. Using "Refereed Full Length Journal Publications MUST be published DURING Associate Professor Rank" as the minimum standard leads to absurd results. See Exhibit B (documents 2 and 4, document 3 PAGE 7 inside).

27. US Equal Employment Opportunity Commission (EEOC) stated: Age Discrimination & Employment Policies/Practices. An employment policy or practice that applies to everyone, regardless of age, can be illegal if it has a negative impact on applicants or employees age 40 or older and is not based on a reasonable factor other than age (RFOA).

28. I searched 10 universities'/colleges' including 6 peer institutions' policy for promotion to Professor. I did not find any requiring "Refereed Full Length Journal Publications MUST be published DURING Associate Professor Rank". I did not find any disallowing the candidate's earlier significant scientific contributions in the later evaluation for promotion.

29. The Promotion & Tenure Committee Chair Nicholas Martin testified in the Level three hearing that the Committee only checked the dates of the publications to see if they were during Associate Professor and only counted the number of publications during Associate Professor. The committee did not give any consideration of the quality or scientific significance of the

publications. See Level three hearing transcripts Volume I (10/4/2018) Page 217 lines 16-22, Page 221 lines 8-13, Page 232 lines 1 – Page 233 line 6.

30. **The former Promotion & Tenure Committee Chair and current Dean Robert Warburton was promoted to Professor without any publication during Associate Professor rank. Robert Warburton is white, from UK. Robert Warburton is one of my major harasser.**

31. **Robert Warburton published less in quality and less in quantity than me before he was promoted to Professor.** See Exhibit D (Robert Warburton CV inside). See Exhibit B (Document 5 Li CV inside).

32. **In the 9/25/2018 prehearing conference conducted by Administrative Law Judge Joshua Fraenkel, Shepherd University General Counsel Alan Perdue admitted that Robert Warburton was promoted to Professor under the same published promotion policy as for my 2016-2017 application for promotion which was denied.** See Level three 9-25-2018 prehearing conference transcript Page 44 line 10 to Page 45 line 12 (also in Exhibit Q). **On October 1, 2018 Administrative Law Judge Joshua Fraenkel ruled not to allow or to hear the evidences of Warburton's promotion.** See Exhibit Q (Grievance Board Secretary Ryan Lawler's October 1, 2018 e-mail inside).

33. **The Promotion & Tenure Committee Vice Chair Carol Plautz published less in quality and less in quantity than me before she was promoted to Professor in 2017. My applications for promotion to Professor was denied in 2017 and**

8

in 2018. **Carol Plautz is white.** See Exhibit D (Carol Plautz CV inside). See Exhibit B (Document 5 Li CV inside).

34. **Carol Plautz testified in the Level three hearing that she did not have any major breakthrough publications <u>before</u> her promotion to Professor.** See Level three hearing transcripts Volume II (10/5/2018) Pages 658 line 11 to Page 661 line 8.

35. **The Promotion & Tenure Committee Chair Nicholas Martin published less in quality than me and the same in quantity as me before he was promoted to Professor in 2016. My applications for promotion to Professor was denied in 2017 and in 2018. Nicholas Martin is white.** See Exhibit D (Nicholas Martin CV inside). See Exhibit B (Document 5 Li CV inside).

36. **Nicholas Martin testified in the Level three hearing that he could not confirm that he had any major breakthrough publications or publications in pup [sic top] journals before his promotion to Professor.** See Level three hearing transcripts Volume I (10/4/2018) Page 209 line 16 to Page 210 line 6. And Page 212 lines 16-21.

37. **I testified in the Level three hearing that, before my application for promotion, I had published 3 major breakthroughs including 2 publications in the most prestigious scientific journals Nature and Science, and at Shepherd University I had 1 more major breakthrough submitted to the top physics journal Physical Review Letters with two referees and total four experts agreed with our main conclusion. Shepherd University did not object**

9

**my above testimony.** See Level three hearing transcripts Volume I (10/4/2018) Page 210 line 21 to Page 211 line 2. See Exhibit A and Exhibit E (Mengyang Li CV, also in Exhibit B document 5 inside).

38. **Shepherd University ignored the publication expectation for tenure stated in the 2/16/2012 employment letter of Jordan Mader, ignored the publication requirement stated in Dean Colleen Nolan's 4/1/2016 and 5/7/2017 letters to Jordan Mader, and awarded Jordan Mader tenure and promotion to Associate Professor in 2018. Jordan Mader is white, under 40. Jordan Mader is one of my major harasser.** See Exhibit F.

39. **Shepherd University ignored the publication expectation for tenure stated in the employment letter of Jacquelyn Cole, ignored the publication requirement stated in Dean Colleen Nolan's letter to Jacquelyn Cole, and awarded Jacquelyn Cole tenure and promotion to Associate Professor in March 2019. Jacquelyn Cole is white.** She is a Millennial (was under 40?). **Jacquelyn Cole is also one of my harasser.** I am seeking from Shepherd University the documents of Jacquelyn Cole.

40. **In contrast, Shepherd University imposed a publication requirement contradict to my employment letter (contract, see Exhibit B document 10) on me, imposed a publication requirement in Dean Nolan's 4/16/2015 letter contradict to my employment letter (contract, see Exhibit B document 10) and contradict to the Faculty Handbook (Exhibit B document 8, Exhibit C**

document 16) on me, and denied my applications for promotion in 2017 and 2018. I am Asian, from China. I was above 55.

41. In the Level one hearing, Promotion & Tenure Committee Chair Robert Warburton admitted for pointing at me and shouting with very loud and stern voice "Sit down!" twice in his office right before my application arrived at his Committee. See Exhibit N Level one hearings transcripts: 12/1/2017 PAGES 5-6.

42. **Under oath, on12/1/2017 in Level one hearing, Promotion & Tenure Committee Chair Robert Warburton (promoted to Acting Dean in July 2017, to Dean in July 2019)** falsely testified twice **that I pointed at him during the meeting that he pointed at me and shouted "Sit down!" twice.** See Exhibit N Level one hearings transcripts: 12/1/2017 PAGE 38.

43. **Under oath, in the Level three hearing (October 4-5, 2018), Robert Warburton testified that I did not point at him during our meeting in his office that he pointed at me and shouted "Sit down!" twice, and** corrected **his false testimony under oath on 12/1/2017.** (See Level three hearing transcripts Volume II (10/5/2018) Page 496 Line 12, Page 497 Lines 2-3, Page 498 Lines 5-8). See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 1).

44. In the Level one hearing, Promotion & Tenure Committee Chair Robert Warburton admitted that he typed the sentence **"The items in your portfolio, associated with honors and awards and publications prior to your tenure and promotion to Associate Professor are deemed inadmissible"** in the Committee

recommendation letter for my application for promotion. See Exhibit N Level one hearings transcripts: 12/1/2017 PAGE 8.

45. In the Level one hearing, Promotion & Tenure Committee Chair Robert Warburton admitted that he did not write the sentence **"The items in your portfolio, associated with honors and awards and publications prior to your tenure and promotion to Associate Professor are deemed inadmissible"** in the Committee recommendation letters for any other person's application for promotion. See Exhibit N Level one hearings transcripts: 12/1/2017 PAGE 32.

46. In the Level one hearing, Robert Warburton admitted that he dismissed my research presentation speech at the American Chemical Society National Meeting peer recognition of scholarly work and peer-reviewed published abstracts during Associate Professor, and wrote **"No notable scholarly work or other professional growth since promotion to Associate Professor that could be objectively substantiated by external peer-reviewed publication could be found"** in the Committee recommendation letter for my application for promotion. See Exhibit N Level one hearings transcripts: 12/1/2017 PAGES 32-33.

47. In the Level one hearing, Robert Warburton admitted that he did not dismiss anyone else's research presentation peer recognition of scholarly work or peer-reviewed published abstracts during Associate Professor, and he did not write **"No notable scholarly work or other professional growth since promotion to Associate Professor that could be objectively substantiated by external peer-reviewed publication could be found"** in the Committee recommendation letter

for anyone else's application for promotion. See Exhibit N Level one hearings transcripts: 12/1/2017 PAGES 32-33.

48. **Under oath on 10/18/2018, I testified the following Items 49-70.** See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony).

49. **Under oath, in the Level three hearing (October 4-5, 2018), Department Chair Dan DiLella made the false testimony denying saying "Nobody saw these [incidents]. Some people just do not like each other" after my October 2016 reporting to him the incidents with Dr. Jordan Mader.** See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 2). See Level three hearing transcripts Volume II (10/5/2018) Page 630 lines 7 – Page 631 line 17.

50. **Under oath, in the Level three hearing (October 4-5, 2018), Department Chair Dan DiLella made a dubious testimony that he did not notice Dr. Jordan Mader for years usually passing me in the hallway with cold face like not knowing me. (Total 6 fulltime faculty in the department. I am the only minority. Our offices, classrooms and labs are on the same floor.)** See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 2). *See* Level three hearing transcripts Volume II (10/5/2018) Page 633 line 13 – Page 635 line 24.

51. In the Level three hearing (October 4-5, 2018), Department Chair DiLella testified that after my October 2017 meeting with him reporting my incidents with Dr. Mader, Chair DiLella soon had a meeting with Dr. Mader and **warned Jordan Mader to be cautious** as I might bring her into the grievance. See

Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 2). See Level three hearing transcripts Volume II (10/5/2018) Page 631 line 18 – Page 633 line 6.

52. **Under oath, in the Level three hearing (October 4-5, 2018), Department Chair Dan DiLella made a dubious testimony that he did not pay attention if Jordan Mader's behavior towards me changed or not after his October/November 2017 warning Jordan Mader to be cautious and that I might bring Jordan Mader into the grievance.** See Level three hearing transcripts Volume II (10/5/2018) Page 633 lines 7-12. **Department Chair DiLella further dubiously testified that these things are of low importance in his mind.** See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 2). See Level three hearing transcripts Volume II (10/5/2018) Page 633 line 13 – Page 635 line 24.

53. **Under oath, in the Level three hearing (October 4-5, 2018), Associate Professor Jordan Mader made the false testimony that the incident of her not looking at me during my visiting her office happened near her beginning at Shepherd (near 2012), and she has been greeting me the way I asked ever since then (ever since near the beginning of her employment at Shepherd in 2012).** See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 3). *See* Level three hearing transcripts Volume I (10/4/2018) Page 349 line 12 – Page 350 line 17.

54. **Under oath, in the Level three hearing, I testified that the not looking at me incidents in Dr. Mader's office happened near Spring 2017, not near 2012.**

See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 3).

55. **Under oath, in the Level three hearing on 10/18/2018, I testified:**

For three years, from Fall 2014, after my relationship with Dr. Sher Hendrickson-Lambert (a female biology professor at Shepherd University, a close friend of Dr. Jordan Mader, a friend of Chair Dan DiLella and Dean Robert Warburton) changed from warm to cold in Summer 2014, up to October 2017, Dr. Jordan Mader usually passed through me in the hallway with cold face like not knowing me. Dr. Mader's not looking at me in her office incidents, and the moving my lecture notes to a stool near the classroom door incident all happened near Spring 2017, within these three years. See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 3).

56. **Under oath, in the Level three hearing (October 4-5, 2018), Associate Professor Jordan Mader made a dubious testimony that she does not remember Chair Dan DiLella's October/November 2017 meeting with her about my complaining of incidents with her.** *See* Level three hearing transcripts Volume I (10/4/2018) Page 353 line 21 – Page 354 line 19, Page 354 line 20 – Page 356 line 8. Chair DiLella testified that in that meeting he **warned Dr. Mader to be cautious** as I might bring her into the grievance. See Level three hearing transcripts Volume II (10/5/2018) Page 631 line 18 – Page 633 line 6. See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 3).

57. Under oath on 10/18/2018, I testify that I did notice that Dr. Jordan Mader's behavior toward me <u>changed</u> for the better after Department Chair DiLella's meeting with her in October/November 2017 warning her to be cautious. See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 3).

58. **In the 12/1/2017 hearing, Mengyang Li asked Jordan Mader:** "Did you commonly just when you see me go straight, like straight faced that called like not recognize me, just going through?" (Exhibit N 12/1/2017 level one hearing transcript Page 47).

59. Under oath **on 12/1/2017, Jordan Mader made the false testimony "Not to my recollection, no, I have continued to greet you with hello and good morning or good afternoon."** (Exhibit N 12/1/2017 level one hearing transcript Page 47). See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 3).

60. **In the 12/1/2017 hearing, Mengyang Li asked Jordan Mader: "When you see another member of the chemistry department, there are six members, do you often give him/her a cold face and the, looks like you not see him or her? In the hallway."** (Exhibit N 12/1/2017 level one hearing transcript Page 49)

61. **Under oath Jordan Mader answered (false testimonies underlined by Mengyang Li):** "Are there times that I don't stop and chat with everyone on my way somewhere? Absolutely. **Do I greet <u>all members of my department</u> and all of my colleagues in the College of Natural Sciences and Mathematics and students that I see, <u>in general, with a smile and a hello or a hey or what's up?</u>**

<u>Yes,</u> I am generally considered to be one of the friendlier professors in our College and the students know that, they often stop me in the hallway, they'll call to me when I walk past a room, and I always stop and make time for them unless I absolutely have to be somewhere. **<u>I have continued to say hello or good morning or good afternoon to you when I see you in the hallway because that is how you told me I should address you.</u>** **<u>I don't believe that I have done it in any colder or warmer fashion than I have addressed any other person."</u>** (Exhibit N 12/1/2017 level one hearing transcript Page 49). See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 4).

62. **In the 12/1/2017 hearing, Mengyang Li asked Jordan Mader: " Dr. Mader, did you put another colleague's lecture notes on a stool near the door after, in time before, after his/her class, before your, before your class?"** (Exhibit N 12/1/2017 level one hearing transcript Page 48)

63. **Jordan Mader answered: "There's no way for me to answer that because no one else has left their lecture notes on the table."** (Exhibit N 12/1/2017 level one hearing transcript Page 48)

64. **In the 12/1/2017 hearing, Mengyang Li described finding his lecture notes was moved to a stool near the door of the classroom well before Dr. Mader's class time:** "In spring 2017, you had classes after my classes in Snyder Hall 337. One day as usual, I erased the board after my class, went to wash my hand, then come back to pick my lecture notes, folder, manila folder. I found my notes folder was moved to the, from the lecture table, I have a lecture table center, to the table edge, well before, you Dr. Mader, well before Dr. Mader's class time, before your

class time. Dr. Mader was at the, in the classroom front. After that, I usually put my notes folder at the side of the table before going to wash my hands after erasing the board of my classroom. I always try to erase my board for every teacher after me. Later one day, in spring 2017, I completed the lecture and erased the board to leave a clean board for Dr. Mader, as I always do. Then I went to wash my hands and came back to pick my notes on the lecture table. I found my lecture notes on the stool near the door, well before Dr. Mader's class time. " (Exhibit N 12/1/2017 level one hearing transcript Page 40)

65. **Then Mengyang Li asked Jordan Mader: "My question is, Dr. Mader did you move my lecture notes?"** (Exhibit N 12/1/2017 level one hearing transcript Page 41)

66. **Under oath Jordan Mader answered (dubious testimonies underlined by Mengyang Li): "Do I specifically remember an incidence when I moved your notes, no. Do I remember that you would leave your lecture notes on the table when I was getting ready to stat class? Yes. You did it three days a week for an entire semester. I don't recall ever moving them. If I did, and I don't believe that I did, maybe it was so that you could retrieve them easier because I was starting class on time. I do remember that you would come in at maybe 10:09 or 10:10 right as I was about to start class and I was worried that it would be distracting to the students. I feel like that's a he said, she said thing because we don't have a timeline of anyone coming and going, so I can't definitively say that I did or did not move it because you are asking me for something that could have happened anytime in the last six months, almost a year ago at**

**this point, so I don't"** (Exhibit N 12/1/2017 level one hearing transcript Page

42). See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written

Testimony Pages 4-5).

67. **Under oath, in the October 4-5, 2018 Level three hearing, Lecturer Kyle**

**Hassler made a false testimony that she did not speak with anybody prior to**

**her removing all the safety goggles from the General Chemistry Lab,**

**resulting in zero safety goggles left in my General Chemistry Lab classes on**

**both 1/16/2018 and 1/18/2018 (right after the 1/12/2018 Level One grievance**

**denial decision), with nobody communicating to me before my classes, twice**

**causing my about 20 students not able to start the lab class.** See Level three

hearing transcripts Volume I (10/4/2018) Page 21 lines 9-19. See Exhibit G

(Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 5).

68. **Both Department Chair Dan DiLella and Assistant Professor Jacquelyn Cole**

**testified in the October 4-5, 2018 Level three hearing:  Shortly after the**

**12/1/2017 Level One grievance hearing, Assistant Professor Cole and**

**Lecturer Hassler spoke with Department Chair DiLella about removing**

**safety goggles from my General Chemistry Lab, prior to Lecturer Hassler's**

**removing all the safety goggles from my General Chemistry Lab.** See Level

three hearing transcripts Volume I (10/4/2018) Page 258 line 12 – Page 264 line

19. See Level three hearing transcripts Volume II (10/5/2018) Page 615 lines 3-

18.  See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written

Testimony Page 5).

69. Multiple people testified that no any other lab had all safety goggles removed. See Level three hearing transcripts Volume I (10/4/2018) Page 272 line 24 – Page 273 line 4.

70. **Under oath, in the October 4-5, 2018 Level three hearing, Jacquelyn Cole admitted multiple attempts to force multiple choice only exams on me during multiple department meeting.** See Level three hearing transcripts Volume I (10/4/2018) Page 276 line 9 – Page 286 line 15. **Jacquelyn Cole also admitted that she took photos of my lab lecture writings without my knowledge or permission first and shared these photos with her students without my knowledge or permission first. She has been unapologetic about it.** See Level three hearing transcripts Volume I (10/4/2018) Page 287 line 1 – Page 292 line 13. See Exhibit G (Mengyang Li Level Three Hearing 10/18/2018 Written Testimony Page 5).

71. **The 2nd denying my application for promotion on 4/23/2018 and all related discrimination and harassment, described in my "<u>Additional Statement of Level Three Grievance</u>"** (in Exhibit C. Filed 2018-0654-SU Level Three Grievance), **have not been heard in the Levels 1-3 hearings yet.**

72. With the 9/25/2018 Motion of Shepherd University, on 9/26/2018, Administrative Law Judge Joshua Fraenkel ordered to split filed Grievance 2018-0654-SU into two Grievances, **and put the 2nd denying my application for promotion on 4/23/2018 and all related discrimination and harassment into a newly created Grievance 2018-1475-SU, and put the 1st denying my promotion and all other**

**discrimination and harassment into the Grievance 2018-0654-SU.** See attached Exhibit H, Orders.

73. The Administrative Law Judge Joshua Fraenkel issued a Dismissal Order of Grievance 2018-0654-SU on January 29, 2019 based on untimely filing, and refused to rule on the merits of the case. See attached Exhibit H, Orders.

74. On March 18, 2019 I filed an Appeal of the Dismissal Order at the Kanawha County Circuit Court (Case No. 19-AA-22), and I asked that the Court reverse the dismissal of Grievance 2018-0654-SU, send the case back for a decision on the merits.

75. On 3/13/2019 Shepherd University made Motion to dismiss my Grievance 2018-1475-SU (created by the Grievance Board Order on 9/26/2018) based on untimely filing.

76. On 3/18/2019 Shepherd University General Counsel Alan Perdue unilaterally scheduled Grievance 2018-1475-SU level one hearing on 3/20/2019.

77. I went to the 3/20/2019 hearing unilaterally scheduled by General Counsel Alan Perdue.

78. In the 3/20/2019 hearing, against the Grievance Board Order issued by Administrative Law Judge Fraenkel on September 26, 2018, **General Counsel Alan Perdue asked Chief Administrator Marie DeWalt not to hear any Discrimination claim.** I am waiting for the 3/20/2019 Grievance 2018-1475-SU level one hearing transcript.

79. In the 3/20/2019 hearing, against the Grievance Board Order issued by Administrative Law Judge Fraenkel on September 26, 2018, **Chief Administrator Marie DeWalt ruled not to hear any Discrimination claim.**

80. In the 3/20/2018 hearing, I stated: The essence of the matter is Age Discrimination. I cannot testify when all discrimination is ruled out from the hearing.

81. I did not testify in the 3/20/2019 hearing.

82. On 4/25/2019, Shepherd University President Mary Hendrix adopted Marie DeWalt's findings as her own, and issued Grievance 2018-1475-SU Level One Decision to deny the grievance on the basis of untimeliness. See Exhibit I, Grievance 2018-1475-SU Level One Decisions.

83. On April 23, 2019, Chief Administrative Law Judge Billie Thacker Catlett issued Order denying Shepherd University's Motion to dismiss Grievance 2018-1475-SU on the basis of untimeliness. See Exhibit J, Order Denying Motion to Dismiss Grievance 2018-1475-SU.

84. **After the Dismissal Order of my Grievance 2018-0654-SU on 1/29/2019, harassers were emboldened, more discrimination and harassment occurred.**

85. In April 2, 2019 department meeting, without discussing with me first, Chair Dan DiLella announced that the department will require professor and each his/her research student to make a poster as a graduation requirement.

86. I suggested to encourage but not to require making a poster.

87. Chair DiLella answered "required", "there is no choice here".

88. Except me, all supported Chair DiLella's new requirement.

89. I raised voice arguing that we reasonably required each student writing a research paper and a defense, requiring more format conformation leaves less time for creativity and may leads to mediocrity.

90. Lecturer Kyle Hassler pointed at me and commanded "Lower your voice!" twice.

91. The meeting was recorded.

92. On 4/11/2019 Kyle Hassler filed Internal Grievance with Dean Robert Warburton against me. See Exhibit K, Hassler Internal Grievance Against Li.

93. I requested another administrator other than Dean Warburton to handle Internal Grievance Hassler v Li.

94. Warburton refused. On May 24, 2019 Warburton directed me: "

    1)  Comply with directions from department Chair [DiLella], from now on, regarding tone of voice in meetings, and

    2)  To fully limit your direct contact with Dr. Hassler, outside of group meetings, to email. "

95. Kyle Hassler, Dan DiLella and Robert Warburton all have being my harassers.

96. On April 23-24, 2019, Shepherd Director Jason Best, Provost Scott Beard, VP Pamela Stevens and General Counsel Alan Perdue insulted Mengyang Li and Mohammadreza Ghahremani in emails. See Exhibit L.

97. Both Mengyang Li and Mohammadreza Ghahremani are minority faculty members.

98. On 4/24/2019 and on 5/3/2019 Department Chair Dan DiLella and Acting Dean Robert Warburton retaliated/discriminated against me in the evaluation process.

99. On 4/1/2019 I found that:

My Summer 2019 classes seats were all set by Chair DiLella at 20;

Jacquelyn Cole's Summer classes seats were all set by Chair DiLella at 12;

Jordan Mader's Summer 2019 classes seats were all set by Chair DiLella at 12.

See Exhibit M.

100.    I was 57. Jordan Mader was under 40.  Jacquelyn Cole is a Millennial

(was under 40?).

101.    In the past 10 years summers, I typically taught classes of near 20 students

but was paid the same as classes of 5 students.

102.    In the past 10 years summers, Shepherd University received total

approximately $500,000 tuition and fees from my summer teaching, outside of the

University budget.

103.    In the past 10 years summers, I received **total** summer salary less than

$88,000.

104.    A detailed analysis of the injustice of the violation of published binding

promotion policy is in Exhibit O.

105.    The facts of discrimination, harassment, and retaliation associated with the

2nd denying my application for promotion on 4/23/2018 described in my

"**Additional Statement of Level Three Grievance**" (in Exhibit C. Filed 2018-

0654-SU Level Three Grievance).

106.    Both Department Chair Dan DiLella (also Promotion & Tenue Committee

Member) and Acting Dean Robert Warburton (Promotion and Tenue Committee

Chair 2012-2017, promoted to Dean today July 1, 2019) **concealed** their

recommendations (11/15/2017, 1/30/2018), the Committee's recommendation (1/15/2018) and the Department's votes (11/15/2017, two votes total, Dan DiLella and Robert Warburton) from me, in violation of the promotion procedural requirements (**Exhibit C Additional Statement of Level Three Grievance**).

107.    When I confronted Chair DiLella about revealing his recommendation on 2/26/2018, Department Chair DiLella replied "You will see all the [recommendation] letters <u>after</u> the president made the decision" and at first refused to reveal his recommendation letter to me (**Exhibit C Additional Statement of Level Three Grievance**).

108.    Department Chair Dan DiLella wrongfully wrote <u>in his 11/15/2017 recommendation concealed from me</u> "*Dr. Li has also listed presentations at scientific meetings as 'juried performances'. Dr. Li has provided the definitions of the words 'juried' and 'performances' to support the claim that the presentations meet the definition of juried performances. I am not sure of the correct definition for a juried performance, but I have never heard the term used to describe a scientific presentation. As far as I know, at Shepherd University juried performances refer to performances in the arts.*" (Exhibit C Document 19).

109.    I have **NOT** listed presentations at scientific meetings as "juried performances", **NOR** have provided the definition of "performances". **I have listed PRESENTATIONS at scientific meetings as "juried EXHIBITIONS of scholarly work" (language in the Faculty Handbook)**. I provided to Chair DiLella the dictionary definitions:

1)  Juried: having the contents selected for exhibition by a jury.

2)  **EXHIBITION: an act or instance of exhibiting, a public showing.**

3)  **EXHIBIT: to PRESENT, to show publicly.**

**(Exhibit C Additional Statement of Level Three Grievance).**

110.    Right after Committee Chair Nicholas Martin and Acting Dean Robert Warburton also revealed their recommendations to me on 2/27/2018 (I did not ask or confront them about revealing their recommendations), both Committee Chair Nicholas Martin and Acting Dean Robert Warburton harassed me, including Acting Dean Warburton's written harassment alleging my **"uncivil and intimidating", "frequent agitations", "individualized threats of lawsuits",** and **"berate or harass"** without himself nor any supervisor come to me to investigate the facts (2/28/2018, 3/2/2018) **(Exhibit C Additional Statement of Level Three Grievance).**

111.    Without any authorization, Department Chair DiLella, Committee Chair Martin, Acting Dean Warburton and Acting Provost Scott Beard **took away** from me the published and binding option **juried EXHIBITIONS of scholarly work** during Associate Professor to satisfy the minimum qualification [in their 11/15/2017, 1/15/2018, 1/30/2018, and 4/17/2018 (Acting Provost) recommendation letters, Exhibit C Documents 19-21, 14, 15], to disqualify me for promotion **(Exhibit C Additional Statement of Level Three Grievance).**

112.     President Mary Hendrix **neglected her duty** to make a decision on my 2nd promotion application shown in her May 2, 2018 letter (Board Policy 19 and Faculty Handbook stated "Promotion and tenure of faculty are the prerogatives of the President, who will base his or her decision primarily upon the guidelines and the recommendation(s) of the Provost...") (Exhibit C Documents 17, 16).

113.     On April 23, 2018 Acting Provost Scott Beard **made unauthorized decision** (violating the published binding Board Policy) denying my 2nd application for promotion (Exhibit C Documents 14, 16).

114.     At the 3/20/2019 Grievance 2018-1475-SU level one hearing, Shepherd University Provost Scott Beard admitted that my presentations at the American Chemical Society National Meeting and at the West Virginia Academy of Science Meetings during Associate Professor are **juried EXHIBITIONS of scholarly work.** This admission shows that Acting Provost Scott Beard's 4/23/2018 decision denying my 2nd application for promotion violated the published promotion policy minimum qualifications Items c and e. I am waiting for the transcripts of the 3/20/2019 Grievance 2018-1475-SU level one hearing.

115.     In late August 2019 at the beginning of Fall semester 2019, I just learned that Shepherd University Chemistry Department hired Visiting Assistant Professor Samuel David when Professor David showed up at work. I was not informed by anybody about the hiring, I did not have any information of the hiring until Professor Samuel David showed up at work. I had been teaching in

the Department in all summer 2019. Recently I found that Cole, DiLella, Warburton and Provost Beard made the hiring decision.

116.    Most recently, on October 29, 2019 I learned that Jacquelyn Cole was approved by Provost Beard as the Chair of the Department of Chemistry. On September 17, 2019, Robert Warburton, Dan DiLella and Jacquelyn Cole elected Jacquelyn Cole as nominee for Department Chair. Robert Warburton, Dan DiLella and Jacquelyn Cole are all my major discriminators/ harassers. Robert Warburton was promoted from Acting Dean to Dean on July 1, 2019. Jacquelyn Cole is white, and a millennial (was under 40?). I was not promoted to Department Chair. I am East Asian. I was 57.

117.    I had a personal relationship with Dr. Sher Hendrickson-Lambert, a Caucasian female professor (A close friend of Jordan Mader, and a friend of Dan DiLella and Robert Warburton). The personal relationship is not physical. We had only one meal (a lunch) together. The personal relationship changed from warm to cold in summer 2014 in consideration of my children.

118.    From fall 2014 to May 2019 five white members of the total 6 people Department discriminated/harassed me.

119.    I suffered severe professional, financial and emotional damages from the continuous Age, Race, National Origin discriminations, harassments and reprisal for filing a complaint/grievance, from fall 2014 to the signing of this Amended Complaint.

## TIMELINESS OF FILING DISCRIMINATION COMPLAINT

On September 23, 2019 the U.S. Equal Employment Opportunity Commission (EEOC) singed Notice of Suit Rights stating "Your lawsuit must be filed within 90 days of your receipt of this notice". The EEOC Notice of Suit Rights was put into mail on September 24, 2019. I received the EEOC Notice of Suit Rights on September 27, 2019. Please see the EEOC Notice of Suit Rights and related documents in Exhibit P. This lawsuit was filed on December 23, 2019, within 90 days of my receipt of the EEOC Notice of Suit Rights.

## RELIEF

The plaintiff requests that this Honorable Court make Shepherd University

1. Right the wrong of denying my promotion, an illegal practice of Age discrimination;

2. Stop the Age, Race and National origin discrimination/harassment and retaliation I have been experiencing continuously from fall 2014 to September/October 2019;

3. Change the hostile work environment I have been experiencing for years;

4. Take personnel disciplinary actions on the perpetrators of discrimination/harassment;

5. And compensate the severe professional, financial and emotional damages that I suffered from the continuous Age, Race and National Origin discriminations, harassments and reprisal for filing a complaint/grievance, from fall 2014 to the Day of Justice.

Respectfully,

*Mengyang Li*

Mengyang Li
12 Turkey Tract Place
Keedysville, MD 21756
301-432-5727, Mengyang.Li@hotmail.com

LIST OF EXHIBITS

Exhibit A. Mengyang Li's One Page Bio, Nature paper, Paper submitted to Physical Review Letters, and Contracts

Exhibit B. Filed Public Employees Grievance Board 2018-0654-SU Level One Grievance

Exhibit C. Filed 2018-0654-SU Level Three Grievance

Exhibit D. CVs of Robert Warburton, Carol Plautz and Nicholas Martin

Exhibit E. Mengyang Li October 2016 CV

Exhibit F. Jordan Mader's 2/16/2012 Employment Letter of Expectation for Tenure, Contract, Dean Colleen Nolan's 4/1/2016 and 5/7/2017 Letters, Jordan Mader's CV

Exhibit G. Mengyang Li Level Three Hearing 10/18/2018 Written Testimony

Exhibit H. 1/29/2019 Dismissal Order of Grievance 2018-0654-SU. 9/26/2018 Order.

Exhibit I. Grievance 2018-1475-SU Level One Decisions

Exhibit J, Order Denying Motion to Dismiss Grievance 2018-1475-SU

Exhibit K, Hassler Internal Grievance against Li

Exhibit L. Insults to Li and Ghahremani by Director, Provost, VP and General Counsel

31

Exhibit M. Summer Class Seats 4-2-2019

Exhibit N. Transcripts of Grievance 2018-0654-SU Level One Hearings

Exhibit O. Analysis of the Injustice of the Violation of Published Binding Promotion
Policy

Exhibit P. EEOC Notice of Suit Rights and related documents (EEOC Charge No. 570-
2019-01219)

Exhibit Q. Administrative Law Judge Fraenkel denied hearing Warburton promotion

Exhibit R. Transcripts of Grievance 2018-0654 –SU Level Three 9/25/2018 Pre-hearing
Conference

Exhibit S. Transcripts of Grievance 2018-0654 –SU Level Three Hearings

POINTS AND AUTHORITIES

The Age Discrimination in Employment Act (29 U.S.C. 621-634) (as amended)

Civil Rights Act of 1964 (as amended)

18 U.S.C. §§ 1621 and 1623

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MENGYANG LI,
      Plaintiff,

                  COMPLAINT
                  CIVIL ACTION NO. _____

v.

SHEPHERD UNIVERSITY,
      Defendant.

### CERTIFICATE OF SERVICE

    I, Mengyang Li, appearing pro se, hereby certify that on the 23rd day of December 2019, I have served the foregoing upon all counsel of record, by mail delivery to:

Shepherd University
Mary J. C. Hendrix, President
301 North King Street
PO Box 5000
Shepherdstown, WV 25443

West Virginia Public Employees Grievance Board
1701 5th Avenue, Suite 2
Charleston, West Virginia 25387

WV Attorney General
State Capitol Complex, Bldg. 1, Room E-26
Charleston, WV 25305

                            _____
                                 Mengyang Li