IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**MENGYANG LI,**

      Plaintiff,

v.                                    CIVIL ACTION NO.: 3:19-CV-216
                                             (GROH)

**SHEPHERD UNIVERSITY,**

      Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON PARTIAL FINDINGS

### I.    Introduction

Pending before the Court is the Defendant's oral Motion for Judgment on Partial Findings. ECF Nos. 113, 118. Pursuant to the Court's October 25, 2023, Order Setting Briefing Schedule [ECF No. 117], the Defendant filed its written brief in support of that Motion on October 31, 2023. ECF No. 118. The Plaintiff filed his response on November 27, 2023, and the Defendant filed its reply on December 1, 2023. ECF Nos. 120, 121. Accordingly, the matter is fully briefed and ripe for review. For the reasons below, the Court grants the Defendant's Motion.

### II.    Factual and Procedural Background

*Pro se* Plaintiff, Mengyang Li, Ph.D., is a naturalized United States citizen whose country of origin is China. In 2008, Plaintiff began his employment with Defendant Shepherd University in its Department of Chemistry. From fall 2014 to May 2019, the Plaintiff alleges he experienced discrimination and harassment from his departmental colleagues and University officers.

During his employment, the Plaintiff applied for promotion from Associate Professor to Professor twice, once in 2016 and again in 2017. According to the University's 2017–2018 Faculty Handbook, a faculty member may be considered for promotion to Professor if they meet eight minimum qualifications. ECF No. 8-1 at 14–15. One of these minimum qualifications requires "[s]cholarly work accomplished during the term of Associate Professor rank as evidenced by refereed publications, funded refereed external grants, juried performances, or juried exhibitions." Id. at 14. The Defendant avers both of the Plaintiff's applications for promotion to Professor were denied because he did not have any refereed publications while in rank as an Associate Professor. See ECF Nos. 5-1 at 52–53 & 5-2 at 10–11.

On May 31, 2019, after unsuccessfully seeking redress with the West Virginia Public Employee Grievance Board ("WVPEGB"), the Plaintiff filed suit in the Circuit Court of Jefferson County, West Virginia. In that complaint, the Plaintiff asserted discrimination, harassment, and retaliation claims pursuant to the West Virginia Human Rights Act. During the pendency of the state court matter,[1] the Plaintiff filed the instant action on December 23, 2019. Here, the Plaintiff presents the same factual allegations set forth in his state court case, and he, originally, asserted claims pursuant to the Age Discrimination in Employment Act ("ADEA"), 18 U.S.C. §§ 1621 and 1623, and Title VII. As relief, the Plaintiff seeks compensation for professional, financial, and emotional damages. ECF No. 1 at 29. In addition, the Plaintiff seeks an injunction to (1) "right the wrong of denying [his] promotion;" (2) stop the Defendant from engaging in future discrimination, harassment, and retaliation based on age, race, and national origin; (3) change the hostile

---

[1] The Circuit Court of Jefferson County, West Virginia dismissed the Plaintiff's complaint on February 28, 2020. See ECF No. 15-1.

work environment he has experienced over the years; and (4) take disciplinary action against the alleged perpetrators of discrimination and harassment. Id.

On July 7, 2020, the Defendant filed a Motion to Dismiss [ECF No. 37]. The Court granted it on August 11, 2020, holding the Plaintiff failed to exhaust his administrative remedies. ECF No. 45. The Plaintiff appealed that dismissal to the Fourth Circuit, which affirmed in part and reversed in part. ECF No. 52. Specifically, the Fourth Circuit held the Plaintiff had satisfactorily exhausted his administrative remedies with respect to his Title VII claims alleging race and national origin discrimination, and it remanded those claims to this Court. Id. at 8–10.

Those Title VII claims proceeded to a bench trial on October 24, 2023. ECF No. 112. Upon conclusion of the Plaintiff's case-in-chief, the Defendant entered an oral Motion for Judgment on Partial Findings pursuant to Federal Rule of Civil Procedure 52(c). ECF No. 113. The Court deferred ruling on that Motion to allow the presentation of more evidence. See ECF No. 114. Specifically, the Court heard testimony from Dr. Mary Hendrix, the President of Shepherd University. On October 25, 2023, the Defendant renewed its oral Motion. When asked to respond, the Plaintiff requested the Defendant file a written version of its Motion so he may better understand it and articulate his position. The Defendant volunteered it was willing to oblige. Accordingly, the Court issued its Order Setting Briefing Schedule on Defendant's Rule 52(c) Motion. ECF No. 117. The Defendant filed its brief in support on October 31, 2023, the Plaintiff filed his response on November 27, 2023, and the Defendant filed its reply on December 1, 2023.

### III. Legal Standard

When considering motions for judgment on partial findings under Federal Rule of

Civil Procedure 52(c), the Court acts as the trier of facts. See Fed. R. Civ. P. 52(c); Cherrey v. Thompson Steel Co., Inc., 805 F. Supp. 1257, 1261 (D. Md. 1992) (citing Holmes v. Bevilacqua, 794 F.2d 142, 147 (4th Cir. 1986)); see also Aluker v. Yan, 2021 WL 972885, at *2 (E.D. Va. Mar. 4, 2021). Accordingly, there are no special inferences in weighing the evidence in a plaintiff's case. Id. "Instead, [the Court] is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." Id. (quoting 9 C. Wright and A. Miller, Federal Practice and Procedure, § 2371 (1971)).

## IV.  Discussion

Before the Court are three claims brought under Title VII, each alleging race and national origin discrimination: (1) discriminatory failure to promote; (2) hostile work environment; and (3) retaliation. Each claim revolves around alleged conduct by the Defendant from 2014 to 2019.[2] Specifically, the claims center on the Defendant's denial of the Plaintiff's 2016 and 2017 applications for promotion from Associate Professor to Professor.

Plaintiffs may generally prove violations of Title VII through either direct evidence of "but-for" discrimination or through the burden-shifting framework originally articulated by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see Foster v. Univ. of Maryland-Eastern Shore, 787 F.3d 243, 249 (4th Cir. 2015). The burden-shifting framework proceeds as (1) the plaintiff presenting a prima facie case of

---

[2] Throughout his filings, the Plaintiff makes assertions beyond the pre-2019 conduct alleged in his Complaint. See, e.g., ECF No. 120 at 25–28. Because that post-2019 conduct is beyond the scope of the Complaint, the Court does not address it here. Further, the Plaintiff regularly cites to evidence and testimony provided during his state grievance proceedings. See, e.g., ECF No. 120 at 9. At the bench trial, the Court ordered both inadmissible, citing authentication and trustworthiness concerns. Accordingly, the Court does not consider them.

4

unlawful discrimination; (2) the defendant, under a burden of production, articulating a legitimate, non-discriminatory justification for the relevant action; and (3) the plaintiff, under a burden of persuasion, proving the defendant's proffered justification is mere pretext for discrimination. Foster, 787 F.3d at 250. This burden-shifting framework operates as a basic "procedural device, designed only to establish an order of proof and production." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 521 (1993). The ultimate burden to establish intentional, unlawful discrimination never truly shifts away from the plaintiff. Williams v. Cerberonics, Inc., 871 F.2d 452, 456 n.2 (4th Cir. 1989).

The Court makes the below findings of fact and conclusions of law for each of the Plaintiff's Title VII claims in turn.

### A. Discriminatory Failure to Promote

As applied to a discriminatory failure to promote claim under Title VII, the burden-shifting framework proceeds as follows. A plaintiff must first establish a prima facie case with the following elements: (1) they are a member of a protected group, (2) they applied for the position, (3) they were qualified for the position, and (4) they were rejected "under circumstances giving rise to an inference of unlawful discrimination." Amirmokri v. Balt. Gas and Elec. Co., 60 F.3d 1126, 1129 (4th Cir. 1995) (citing Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994)). If a plaintiff so establishes, the defendant may then rebut the prima facie case by showing the person promoted instead of the plaintiff was better qualified or by presenting another legitimate non-discriminatory reason. Id. The plaintiff then has the final burden of persuasion to show the employer's articulated justification was merely pretextual. Carter, 33 F.3d at 458.

i. <u>The Defendant's Arguments</u>

In its Motion here, the Defendant argues the Plaintiff, in his case-in-chief, failed to meet his burden in establishing a prima facie case. The Defendant first avers the Plaintiff did not establish he was qualified for promotion to Professor. ECF No. 73 at 2. Specifically, the Defendant contends the evidence offered at the bench trial demonstrates (1) its requirements for promotion to Professor are set out in its Faculty Handbook; (2) the Plaintiff was not only aware of those requirements, but aware the Defendant's interpretation of them required him to have at least two full publications in a peer-reviewed journal during his time as an Associate Professor; and (3) the Plaintiff did not have such publications. <u>Id.</u>

Second, the Defendant argues the Plaintiff failed to meet his burden in demonstrating his applications for promotion were "rejected under circumstances giving rise to an inference of discrimination." <u>Id.</u> Specifically, the Defendant contends, while the Plaintiff's case-in-chief claims a White candidate was promoted without meeting the publications requirement, the "Plaintiff failed to submit proof that the same standard for promotion was in place at the time the other candidate was promoted, when the other applicant was promoted, and affirmative proof of the qualifications of that professor, or the lack thereof." <u>Id.</u> at 3 (citing <u>Rowe v. N.C. Agric. and Tech. State Univ.</u>, 630 F. Supp. 2d 601 (M.D. N.C. 2009)).

ii. <u>The Plaintiff's Arguments</u>

As to the issue of qualification, the Plaintiff responds, while "peer-reviewed publication during the rank of Associate Professor is the NORM in higher education . . . relying on the . . . MI[N]IMUM qualifications to enforce the norm . . . would

leave NO EXCEPTION." ECF No. 120 at 8. Additionally, the Plaintiff asserted in his case-in-chief that he has published abstracts and given speeches he believes qualify as peer-reviewed publications. See id. He argues the Defendant intentionally misinterpreted the qualifications in the Faculty Handbook by excluding those abstracts and speeches from the definitions of "juried performances" and "juried exhibitions." See id.

As to the issue of whether circumstances give rise to an inference of discrimination, the Plaintiff responds three "[W]hite colleagues with qualifications similar to or less than [the] Plaintiff" were promoted while he was denied. Id. at 11. The Plaintiff's case-in-chief focused on Dr. Robert Warburton, whom the Plaintiff alleged "was promoted under the same . . . qualifications" despite not having any publications during his time as Associate Professor. Id. at 11–12. In support, the Plaintiff cites what he asserts is Dr. Warburton's CV. Id. at 12–13.

### iii.   Analysis

The Court agrees with the Defendant. Beginning with the qualification requirement, "federal courts have adhered consistently to the principle that they operate with reticence and restraint regarding tenure-type decisions." Jiminez v. Mary Wash. Coll., 57 F.3d 369, 377 (4th Cir. 1995). This Court's "review is narrow, being limited to determining 'whether the appointment or promotion was denied because of a discriminatory reason.'" Id. (quoting Smith v. Univ. of N.C., 632 F.2d 316, 345–47 (4th Cir. 1980)).

Here, the Plaintiff argues, while he did not publish two peer-reviewed publications, various abstracts and speeches of his qualify as "juried performances" or "juried exhibitions" such that he meets the minimum requirements for promotion as laid out in the Faculty Handbook. See ECF No. 5-2 at 14. The Defendant, through its President,

Dr. Hendrix, testified that "juried performances" and "juried exhibitions" are not relevant to the Plaintiff's applications because they are understood in academia to be undertaken by those in the performing arts, such as music, rather than those in the "hard sciences." Moreover, the Plaintiff affirmed he understood and was aware of the Defendant's interpretation of the requirement insofar as he protested that interpretation prior to his applications for promotion.

The Court finds accepting the Plaintiff's argument—that his abstracts and speeches technically qualify him for promotion through the path used by fine arts professors—would be precisely the type of intrusion the Fourth Circuit has held courts must be vigilant to avoid. Jiminez, 57 F.3d at 376–77. "Determinations about such matters as . . . research scholarship . . . are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by [the University]." Id. at 377 (quoting Kunda v. Muhlenberg Coll., 621 F.2d 532, 548 (3rd Cir. 1980)).

The question of whether the Defendant's determination here was used to obscure discrimination brings the Court to the fourth element of the Plaintiff's prima facie case: whether the circumstances surrounding the denial of his applications for promotion give rise to an inference of discrimination. The Court finds they do not. The Plaintiff attempts to meet this element by arguing three White applicants were promoted despite also not having two peer-reviewed publications. ECF No. 120 at 11. However, the Plaintiff submitted no evidence as to (1) when the other applicants were promoted, (2) the criteria the other applicants were subject to, or (3) the other applicants' qualifications.[3]

---

[3] The Court notes the Plaintiff did submit what he asserts are the CVs of the other applicants. At the bench trial, the Court ruled it will not consider them because they are unauthenticated. See also Rowe, 630 F.

8

Moreover, Dr. Hendrix testified she informed the Plaintiff of the reasons his initial application for promotion was denied. Specifically, Dr. Hendrix referenced a letter she sent the Plaintiff dated May 3, 2017. Therein, Dr. Hendrix lauds the Plaintiff's success in "enhancing student learning," and avers she is "proud [the Plaintiff is] a part of [the] faculty." ECF No. 5-1 at 52. However, the letter goes on to state the Plaintiff has "no refereed publications while in rank, and this remains an impediment to the promotion [he] [sought]." Id. at 53. The Plaintiff responded to that letter on May 17, 2017. See id. at 11–17. In that response, the Plaintiff explains his position at length. He argues Dr. Hendrix misinterpreted the minimum requirements and that her interpretation "leads to absurdity and injustice." Id. at 11, 13. However, at no point does he suggest or allege race or national origin discrimination. Further, at the bench trial, Dr. Hendrix expressly testified the Plaintiff would have been promoted had he followed the guidance in the May 3, 2017, letter and obtained two refereed publications.

Thus, the evidence before the Court shows only the Plaintiff's applications for promotion were denied because the Defendant found he did not meet the minimum requirements, the operative interpretation of which the Plaintiff was aware—as highlighted by the seven-page letter he wrote arguing against it. Without more, the Court finds the circumstances do not warrant an inference of discrimination.

Because the Plaintiff can establish neither that he was qualified for promotion nor that the circumstances surrounding his denial give rise to an inference of discrimination, the Court holds the Plaintiff did not establish a prima facie case. Accordingly, absent direct evidence of discrimination, the Plaintiff's discriminatory failure to promote claim fails as a

---

Supp. 2d at 610 (declining to consider an unauthenticated resume as evidence of another applicant's credentials) (citing Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993)).

9

matter of law.

### B. Racial Harassment

As applied to a racial harassment, or hostile work environment, claim under Title VII, the burden-shifting framework proceeds as follows. A plaintiff must first show "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Specifically, a plaintiff must establish there is (1) unwelcome conduct; (2) that is related to the plaintiff's race or national origin; (3) "which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)).

In considering whether the alleged conduct is sufficiently severe or pervasive, a court considers a number of factors, including, but not limited to, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Belton v. City of Charlotte, 175 F. App'x 641, 656 (4th Cir. 2006) (unpublished) (quoting Harris, 510 U.S. at 23)). "Whether the environment is objectively hostile or abusive is 'judged from the perspective of a reasonable person in the plaintiff's position.'" Boyer-Liberto, 786 F.3d at 277 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and

conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

i. The Defendant's Arguments

As to this claim, the Defendant makes two substantive arguments. First, it argues the conduct the Plaintiff alleges is not sufficiently severe or pervasive to sustain his claim insofar as "he was able to successfully teach students, serve on University committees[,] and engage in the preparation of abstracts." ECF No. 118 at 5–6. Second, the Defendant contends the Plaintiff failed to establish that the alleged conduct "would cause a reasonable person to believe they were motivated by racial animus." Id. at 6 (citing Orenge v. Veneman, 218 F. Supp. 2d 758 (D. Md. 2002)).

ii. The Plaintiff's Arguments

The Plaintiff responds individually to each element of a racial harassment claim by stating "Plaintiff met this." ECF No. 120 at 18. As to his allegation that Dr. Warburton "pointed at [him] and using a very loud a stern voice shouted: 'Sit down!' twice[,]" the Plaintiff states he has "never heard such LOUD HATEFUL shouting at any colleague . . . except in this incident." Id. at 22. As to the Defendant's argument that the Plaintiff failed to show racial animus was the justification of the alleged harassment, the Plaintiff seemingly contends, because the alleged conduct took place after the end of his "personal romantic relationship . . . with a [W]hite female professor," racial animus is the explanation for the alleged actions. Id. at 20.

iii. Analysis

The Court agrees with the Defendant. Specifically, the Court finds the conduct alleged by the Plaintiff is not sufficiently severe or pervasive. During his case-in-chief, the Plaintiff's hostile work environment claim focused on four instances of conduct: (1) the

11

removal of goggles from his lab; (2) various occasions where another professor, Dr. Jordan Mader, opted not to speak to, or was short with, the Plaintiff; (3) a meeting with Dr. Warburton wherein the Plaintiff was sternly told to "sit down;" and (4) various other professors' advocating for the use of a standardized, multiple-choice test.

Even assuming the alleged conduct took place exactly how the Plaintiff describes, the "severe or pervasive" burden is a high one. E.g., compare Addison v. CMH Homes, Inc., 47 F. Supp. 3d 404 (D. S.C. 2014) (holding eleven incidents of a defendant's use of "deplorable" racial slurs over the course of two years not sufficiently severe or pervasive) with Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding daily use of racial slurs sufficiently severe or pervasive). Beginning with pervasiveness, the alleged conduct here is similar to that in Addison because there are a handful of incidents alleged to have occurred over multiple years, in contrast to the daily aggressions in Spriggs. As to severity, the alleged conduct here is a far-cry from the actions in both Addison and Spriggs. The court in Spriggs appropriately described the defendant's constant, daily use of racial slurs as "pure anathema to African-Americans" and going "far beyond the merely unflattering; it is degrading and humiliating in the extreme." Spriggs, 242 F.3d at 185. Even the interpretation of the alleged conduct here most generous to the Plaintiff does not rise to the same level. At most, it could be considered rude, but "Title VII does not create a 'general civility code' in the workplace; it only proscribes behavior that is 'so objectively offensive as to alter the 'conditions' of the victim's employment.'" Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 335 (4th Cir. 2010). Moreover, the Plaintiff has presented no evidence that his race or national origin motivated the alleged conduct. Other than conclusory allegations, the Court is unaware of any evidence suggesting the

Defendant ever considered the Plaintiff's race or national origin. It is axiomatic that the use of racial slurs is motivated by race, but, absent such an inherent connection to race, it is necessarily the Plaintiff's burden to provide evidence that his race or national origin motivated the alleged conduct. The Plaintiff has not submitted any such evidence.

Thus, the Court finds (1) the Defendant's alleged conduct was not sufficiently severe or pervasive and (2) even if it was, the Plaintiff failed to meet his burden of establishing the Defendant's alleged conduct was motivated by racial animus or otherwise related to his race or national origin. Therefore, the Plaintiff did not establish a prima facie case. Accordingly, the Plaintiff's hostile work environment claim must fail as a matter of law.

### C. Retaliation

As applied to Title VII's anti-retaliation provision, the burden-shifting framework proceeds as follows. First, the plaintiff must establish a prima facie case that (1) they engaged in a "protected activity;" (2) their employer took an "adverse action" against them; and (3) there was a causal link between the two events. Laurent-Workman v. Wormuth, 54 F.4th 201, 212 (4th Cir. 2022) (citing Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 217 (4th Cir. 2016)). If a prima facie case is made out, then the employer must proffer a legitimate, non-retaliatory justification. Foster, 787 F.3d at 250. It is then the plaintiff's burden to show that justification is mere pretext. Id.

Protected activity is divided into two categories: participation and opposition. Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258–59 (4th Cir. 1998) (citing 42 U.S.C.A. § 2000e-3(a)). Participation activities are outlined in the statute: "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any

13

manner in an investigation, proceeding, or hearing *under Title VII*." Id. (emphasis added). In contrast, "[o]pposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Id. (citing Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981)). To determine whether an action falls into the "opposition activity" category, courts employ a balancing test wherein the law's purpose of protecting individuals acting in opposition to discrimination is weighed against Congress's desire to not overly restrict employers' ability to select and control personnel. Id.

To prove an employer's action is adverse, a plaintiff must show "that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Laurent-Workman, 54 F.4th at 213 (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

### i. The Defendant's Arguments

As to this claim, the Defendant makes two arguments. First, it argues the Plaintiff did not prove he engaged in protected activity. ECF No. 118 at 6. Specifically, the Defendant contends because the Plaintiff's original grievance did not allege a violation of Title VII or race or national origin discrimination generally, the filing of that grievance does not constitute protected activity. Id.

Second, the Defendant claims even if the Plaintiff filing a grievance after the first promotion denial does constitute protected activity, the Plaintiff has not met his burden in establishing causation. Id. at 7. Because the Defendant's proffered justification for

14

denying the Plaintiff's second promotion application—insufficient publications while an Associate Professor—is the same as the first denial, the Defendant avers the Plaintiff cannot meet his burden in demonstrating the second denial was a result of the alleged protected activity. Id.

### ii. The Plaintiff's Argument

Regarding the Defendant's first argument, the Plaintiff responds his original grievance did allege discrimination. E.g., ECF No. 120 at 31. Specifically, he argues his categorizing certain events as "Discrimination" "does NOT exclude RACE and NATIONAL ORIGIN DISCRIMINATION." Id. As to the Defendant's second argument, the Plaintiff asserts "[t]he real reason [the Defendant denied his second promotion application] is RACE and NATIONAL ORIGIN DISCRIMINATION." Id. at 32. In support, the Plaintiff points the Court to "FACTS in Plaintiff's multiple foregoing Answers in [his] Response[.]" Id.

### iii. Analysis

The Court agrees with the Defendant. The crux of the Plaintiff's retaliation claim is his allegation that the Defendant's motivation for denying his second application for promotion was to retaliate against him for his first grievance. However, "[t]o establish a claim of retaliation . . . a plaintiff must show that he . . . participated in a charge or other proceeding *under Title VII*[.]" Balazs v. Liebenthal, 32 F.3d 151, 159 (4th Cir. 1994) (emphasis added). Here, the Plaintiff is correct that categorizing allegations as "Discrimination" does not *exclude* the possibility that they relate to race or national origin. However, it is equally true that such categorization does not necessarily *include* the allegation that they do relate to race or national origin, and the substance of the Plaintiff's

15

filings there attempts to litigate the proper interpretation of the publication requirement, which does not relate to the Plaintiff's race or national origin. See, e.g., ECF No. 5-1. Moreover, the Plaintiff's later grievance expressly states his first grievance did not include the alleged "incidents of harassment" at issue here. ECF No. 5-2 at 8 ("I did not bring these incidents of harassment and discrimination . . . in filing my . . . grievance on 10/30/2017.").

Further, even assuming the Plaintiff's first grievance constitutes protected activity, the Plaintiff has presented no evidence, other than his own assertions, that the grievance motivated the second promotion denial. If, for example, after the first promotion denial, the Plaintiff corrected the Defendant's proffered justification and was denied again alongside a new interpretation, an inference of retaliatory motivation might well be reasonable. However, that is not what the record shows. The evidence before the Court shows the Plaintiff did not attempt such a correction. Rather, he simply applied for promotion again and reasserted the same argument, that the Defendant misinterpreted its minimum requirements, he had previously made (1) prior to his first application for promotion, (2) after the first promotion denial, and (3) as the basis of his first grievance proceeding. Thus, it logically follows the Defendant would, and did, deny the Plaintiff's second application for promotion because he still did not meet the publication requirement the Defendant maintained—and explicitly informed the Plaintiff of—before, during, and after the Plaintiff's applications for promotion.

Accordingly, the Court finds the Plaintiff's first grievance does not constitute protected activity because it was not brought under Title VII. Further, even assuming the Plaintiff's first grievance was protected activity, the Court holds the Plaintiff did not meet

his burden in establishing causation. Thus, the Plaintiff's retaliation claim must fail as a matter of law.

### D. Plaintiff's Procedural Objections

Next, the Court addresses what it interprets as procedural objections expressed in the Plaintiff's response in opposition [ECF No. 120]. Construed liberally, the Plaintiff (1) describes these proceedings as "extremely unfair" because he is *pro se*, (2) states he did not testify at the bench trial and did not conclude his case-in-chief, and (3) misrepresents the Court's ruling as to witnesses at the bench trial. ECF No. 120 at 2–4.

Beginning with the first, the Plaintiff's argument suggests he has been somehow prevented from obtaining counsel. See id. at 1–2 (discussing the Court's denial of the Plaintiff's second request for an extension in submitting a Joint Proposed Schedule). The present action has been ongoing for almost four years, and it has been over six years since the Plaintiff was first denied promotion. See ECF No. 1; ECF No. 121 at 1. Throughout this case, the Plaintiff has been repeatedly and specifically encouraged to retain counsel, both by this Court and United States Magistrate Judge Trumble. ECF No. 80 at 1–2. Each time, the Plaintiff was informed if he proceeded *pro se* he would be subject to the Federal Rules of Civil Procedure and the Federal Rules of Evidence. See, e.g., ECF No. 87 at 1–2. The Plaintiff's failure to obtain counsel does not change the procedural rules governing this case. Moreover, the Court has regularly extended the Plaintiff leniency beyond that provided to most attorneys appearing before this Court, such as (1) its first extension of the deadline to submit a Joint Proposed Schedule [ECF No. 80]; (2) its admittance of some of the Plaintiff's evidence at the bench trial, despite it

having been both untimely and objected to; (3) its deferring ruling on the Defendant's oral Motion for Judgment on Partial Findings; and (4) its full consideration of the Plaintiff's response here despite the fact that it significantly exceeds the page limit set by Local Rule of Civil Procedure 7.02(b).

As to the second, it is flatly untrue that the Plaintiff did not testify at the bench trial. The Plaintiff testified, uninterrupted, save for an occasional objection by the Defendant, for several hours at the first day of the bench trial. Upon concluding his testimony, the Court asked multiple times if, in light of the Court's rulings on certain evidence and witnesses, he had anything else to present. The Court explained if he did not, it would then be the Defendant's turn to present its case, which the Defendant would be "in the driver's seat of." ECF No. 120 at 3. The Plaintiff answered he had nothing else to present.

As to the third, the Plaintiff misrepresents the Court's ruling as to witnesses at the bench trial. It is true both parties failed to timely submit any pretrial filings, including evidence and witness lists. The Defendant, while late, did file a "Joint"[4] Proposed Pretrial Order containing a witness list. ECF No. 107. Consequently, the Court made clear at the bench trial it was not inclined to let either party call witnesses or present any evidence. Because the Defendant had filed a witness list though, the Court twice asked the Plaintiff if he had any objection to the Defendant calling its witnesses. The Plaintiff stated he wanted to hear from the Defendant's witnesses as well, and, therefore, did not object. Accordingly, the Court allowed the Defendant to call its witnesses. Because the Plaintiff has been aware of the date for the bench trial for at least eight months, he was afforded

---

[4] The Defendant submitted what is stylized as "Defendant Shepherd University's Submission of Its Portion of Joint Pre-Trial Order." ECF No. 107. It is so stylized because when the Defendant requested the Plaintiff's cooperation and input, the Plaintiff declined. Id. at Ex. 1.

ample opportunity to timely file a witness list. That (1) he did not, (2) he neglected to participate in submission of the "Joint" Proposed Pretrial Order, and (3) he chose not to object to the Defendant calling its witnesses are not procedural flaws, but mistakes in strategy and preparation on his part.

Thus, the Plaintiff's expressed objections are without merit because "even pro se litigants are expected to comply with time requirements and other procedural rules 'without which effective judicial administration would be impossible.'" Dancy v. Univ. of N.C. at Charlotte, 2009 WL 2424039, at *2 (W.D. N.C. Aug. 3, 2009) (quoting Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989)).

## V. Conclusion

In sum, the Court holds the Plaintiff failed to meet his burden in each of his Title VII claims. Thus, the Defendant's Motion for Judgment on Partial Findings [ECF Nos. 113, 118] is **GRANTED**. Accordingly, it is **ORDERED** this case be **DISMISSED** and **STRICKEN** from the active docket of this Court.

It is so **ORDERED**.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record and the *pro se* Plaintiff by certified mail, return receipt requested, at his address as listed on the docket sheet.

**DATED**: March 18, 2024

GINA M. GROH
UNITED STATES DISTRICT JUDGE